Clarence MITCHELL and Aischa
Mitchell, Plaintiffs,

v.

CENTURY 21 RUSTIC REALTY,
Sheila Shane, Harvey Shane, and
Mathew Ryan, Defendants.

No. 02–CV–1162 TCP WDW.

United States District Court,
E.D. New York.

Nov. 1, 2002.

As Amended Nov. 5, 2002.

Stephen T. Mitchell, for plaintiffs.

Neil J. Montt, Stephen J. Penino, Thalia Feilen, for defendants.

### MEMORANDUM AND ORDER

PLATT, District Judge.

Defendants Sheila and Harvey Shane (the "Shanes") move (i) pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on Clarence and Aisha Mitchell's (the "Mitchells" or "Plaintiffs") claims for housing discrimination under the Fair Housing Act, 42 U.S.C. §§ 3601 *et. seq.*, 42 U.S.C. §§ 1981 & 1982, and New York Executive Law § 296(5)(a)(1); (ii) to cancel the Notice of Pendency filed by the Mitchells, and (iii) for sanctions and attorneys' fees against the Mitchells and their counsel Stephen Mitchell ("SM").

Defendants Century 21 Rustic Realty ("Century 21") and Mathew Ryan ("Ryan") have submitted supporting affidavits and seek summary judgment *sua sponte* as well as sanctions and attorney's fees. For the reasons stated below, summary judgment is GRANTED as to all Defendants and the Notice of Pendency is CANCELLED. The Court declines to decide

Defendants' motions for sanctions and attorney's fees at this time, but will consider such motions after the Mitchells have exhausted any right to appeal.

The Mitchells have also requested that this Court and Magistrate Judge William D. Wall recuse themselves from this case. That request is DENIED.

### BACKGROUND

This action commenced when the Mitchells, who are African American, filed a complaint alleging that they were improperly denied the opportunity to purchase the Shane's property in Southampton, New York (the "Subject Property") because they were discriminated against based on their race. In January 2002, the Shanes contracted to sell the Subject Property to Michael Selleck ("Selleck") but have been unable to close on the transaction due to the Notice of Pendency filed in this case. The facts of this action have been laid out in great detail in three prior court opinions, familiarity of which is presumed, and will not be restated in great detail here.

The prior decisions include this Court's 49–page Memorandum and Order dated April 29, 2002, which denied Plaintiffs' motion for a preliminary injunction (the "Order") and adopted Magistrate William D. Wall's 11–page Report and Recommendation dated March 25, 2002 (the "Report"). Judge Wall's Report, decided after an evidentiary hearing that produced a 344–page record, held that "there is not a shred of evidence to support or even suggest that discrimination played any part in this transaction." *Mitchell v. Century 21 Rustic Realty*, No. 02–CV–1162, slip op. at 6 (E.D.N.Y. March 25, 2002). The Court of

Appeals for the Second Circuit subsequently affirmed this Court's Order in a Summary Order dated September 6, 2002, (the "Decision") and held that defendants had "failed to adduce any evidence of discriminatory intent, nor did they offer evidence sufficient to raise an issue of fact as to whether the defendants' stated reasons were not in fact the true reasons for declining the Mitchells' opinion." *Mitchell v. Century 21 Rustic Realty*, No. 02–7495, 45 Fed.Appx. 59, 60 (2nd Cir. September 6, 2002).

These prior decisions were based on a thoroughly developed factual record, including the three-day evidentiary hearing before Magistrate Judge Wall in which the Plaintiffs called six witnesses with direct knowledge of the relevant facts and in which the Mitchells were specifically afforded the opportunity to depose the Shanes.[1] (Tr. at 284.) After the Second Circuit's Decision, Plaintiffs made no attempt to obtain additional discovery despite the fact that discovery had never been stayed in this case. The Shanes, who are still waiting to close on the Selleck transaction after nine months, brought the instant motion by an Order to Show Cause on October 11, 2002.

At the show cause hearing before this Court on October 18, 2001, the Mitchells argued that they needed further discovery, including the deposition of the Shanes who now reside in Florida. This is despite the fact that Judge Wall afforded SM the opportunity to depose the Shanes on two separate occasions during the evidentiary hearing and notwithstanding the fact that SM could have taken the deposition subsequent to the Second Circuit's Decision.[2]

---

**1.** Cites to the evidentiary hearing before Judge Wall are cited as Tr. at __.

**2.** At the evidentiary hearing SM stated, "No. I think our case will stand as it is. We will not depose [the Shanes]." (Tr. at 342.)

Despite the voluminous record before this Court and Judge Wall's repeated offers to allow SM to take the Shanes deposition, SM filed a declaration on October 18, 2002, stating, *inter alia:*

(Tr. 284–85, 342–33.) At the show cause hearing, this Court gave the Mitchells until October 25, 2002, to obtain any further discovery it requested as required by Rule 56(c) of the Federal Rules of Civil Procedure, including the opportunity once again to depose the Shanes in Florida. (Tr. of October 18, 2002, hearing at 5, 9.)

SM again passed on the opportunity to take the Shane's deposition in Florida and instead sought to have the depositions taken telephonically. At the evidentiary hearing on October 29, 2002, Magistrate Judge Wall stated that he would grant the Mitchells' request for the telephone deposition as long as it was conducted in accordance with the Federal Rules of Civil Procedure, including the requirement that the Court reporter be in Florida. (Tr. of October 24, 2002, hearing at 6.) SM once again elected not to take the Shanes deposition. (Id. at 7.) SM did receive complete discovery responses from Ryan and Kara Bak ("Bak"), the Shanes real estate attorney, and did conduct telephone depositions of these witnesses. Defendants also turned over any documents in their possession that had not already been turned over and which were requested by the Mitchells. On October 29, 2002, the Mitchells filed their responsive papers to this motion, which included, *inter alia*, declarations from Richard Crosier, a real estate appraiser and Wendy Tilton, a licensed real estate broker, along with small portions of the deposition testimony from Ryan and Bak.

The material facts in this case remain indisputable. On January 3, 2002, Bak sent the contract of sale to the Mitchell's real estate attorney, Marie Ongioni ("Ongioni"), with a letter stating that the contract had to be returned to Bak within ten days of their receipt or the "offer shall be considered terminated" and requesting that Bak be contacted before any changes were made to the contract. (Defs. Evidentiary Hearing Ex. 3.) Ongioni received the contract on January 4, 2002. On January 14, 2002, Robin Kaplan, the broker who communicated with the Mitchells, called Ryan to negotiate a price reduction based on the engineer's report. (Tr. at 104.) After some coaxing from Ryan, the Shanes agreed to an $8,000 price reduction and agreed to extend the time for the signed contracts until January 17, 2002. (Tr. at 106.)

On January 18, 2002, the Mitchells changed the contract price to $677,000 and the mortgage contingency clause from 80% to 90% and forwarded the contract to Ongioni. (Defs. Evidentiary Hearing Ex. 5.) Ongioni did not send the unilaterally altered contract to Bak until January 22, 2002. Bak received the contract on January 23, 2002, which was six days after the extended deadline. (Tr. at 269–70.)

Meanwhile, on January 23, 2002, Selleck had conveyed to the Shanes an offer for $685,000 with a 42% mortgage contingency. The Shanes indicated to Bak that they would prefer the Selleck offer if it could be accomplished immediately. *Mitchell v. Century 21 Rustic Realty*, No. 02–CV–1162, slip op. at 5 (E.D.N.Y. March 25, 2002). On January 24, 2002, Bak forwarded a contract of sale to Selleck and Selleck returned the executed contract and a check for $68, 500 the next day. *Id.*

---

5. "Thus far there has been no discovery for either side in this case. There have been no delays in requesting discovery." (Decl. of Stephen T. Mitchell in support of Pl.'s motion for discovery, ¶ 5.)

13. "The plaintiff also would like to depose the Shanes. Their testimony will help us defeat summary judgment motion because they will not be able to provide a good faith reason for their actions." (Decl. of Stephen T. Mitchell in support of Pl.'s motion for discovery, ¶ 13.)

## DISCUSSION

### A. Summary Judgment

Courts may grant summary judgment when the moving party demonstrates (1) that there is no genuine issue of material fact for trial; and (2) that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *National Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 103 (2d Cir.2001). On motions for summary judgment, courts must construe all facts and draw all inferences in favor of the non-moving party. *See Howley v. Town of Stratford*, 217 F.3d 141, 150–51 (2d. Cir. 2000).

Facts are material if they "might effect the outcome of the suit under the governing Law." *National Union* 265 F.3d at 103 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). To survive a motion for summary judgment, the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts." *Dister v. Cont'l Group Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988) (quoting *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

Courts have consistently applied a three-part burden shifting test to claims arising under the Fair Housing Act claims, 42 U.S.C. §§ 1981, 1982 and the New York Human Rights Law. This analysis requires the plaintiff to first prove by the preponderance of the evidence a prima facie case of discrimination. *The Open Housing Ctr., Inc. v. Kessler Realty, Inc.*, 2001 WL 1328446, *9, 2001 U.S. Dist. LEXIS 17596 at *27 (E.D.N.Y.2001)(citing *Jones v. Alfred H. Mayer, Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968)). Second, if the plaintiff is successful, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse decision. *Id.* Third, if the defendant carries its burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not the true reasons, but were a pretext for discrimination. *Id.*

As the Second Circuit found in its Decision, even assuming that the defendants had established a *prima facie* case of discrimination, the Defendants met their burden of production by proffering legitimate, non-discriminatory reasons for selecting another buyer and the Mitchells have failed to show that these reasons were a "pretext" for discrimination. As the Second Circuit noted, these reasons include the fact that Mr. Selleck's offer was $8,000 higher and met the Shanes 80% financing condition, which the Mitchells' counter-offer did not. *Mitchell v. Century 21 Rustic Realty*, No. 02–7495, 45 Fed.Appx. 59, 60 (2nd Cir. September 6, 2002). The Shanes were under no obligation to sell the property to the Mitchells because (i) the Mitchells had not returned the signed contract within the required time period which had been extended until January 17, 2002, and (ii) when the signed contracts were returned, the 80% mortgage financing term had been unilaterally changed to the Mitchells' 90% financing term.

None of the original or additional discovery has cast any doubt that the Shanes rejected the Mitchells offer for legitimate non-discriminatory reasons. This is not surprising considering the fact that the Mitchells already had virtually all the material documents demanded of the Shanes at the time of the preliminary injunction hearing and had already had the opportunity to question all the relevant witnesses at that time. (Moritt Reply Aff. ¶ 40.)

It is clear that by the time of Selleck's offer, January 23, 2002, the Shanes were under no contractual obligation to the Mitchells and that they were free to accept the higher offer with the lower mortgage

contingency. While the Mitchells attempt to show that the 80% mortgage requirement was not important to the Shanes by providing a three-page portion of Ryan's October 24, 2002, deposition, this testimony only states that Ryan did not have a conversation with the Shanes regarding the 80% financing on January 23, 2002, and that the Shanes were concerned with the delay (Ryan Dep. at 5–6.) Ryan's deposition further makes clear that he did discuss the financing of the Mitchells offer with the Shanes when the issue first arose in December and that the Shanes had expressed their desire to have more equity in the property. (Ryan Dep. at 13–14; Tr. at 12.) Moreover, the Shanes did discuss the Mitchells' change of the financing term in the signed contracts with Bak.

The Shanes had good reason to consider the mortgage financing when deciding on a purchaser. If the property did not appraise for the purchase price the transaction would be at risk. This is especially true in this case as the Subject Property had been on the market for almost two years and the Shanes had continually reduced the purchase price. (Moritt Reply. Aff. ¶ 15.) While the mortgage financing may always be a relevant inquiry for a seller of real property in order to assure a smooth and timely transaction, it was especially important in this instance.[3] There is no evidence that rejection of the Mitchells' contract, in part based on the Mitchells' unilateral changing of the financing term, was a "pretext" for discrimination.

The Mitchells further argue, primarily through the declaration of Wendy Tilton, that Ryan discriminated against the Mitchells by making it easier for Mr. Selleck to purchase the Subject Property. The evidence is quite to the contrary. The record shows that, unlike the Shanes who did not know the Mitchells race during the contracting process, Ryan knew the Mitchells' race from the beginning and made every effort to effect the sale to the Mitchells. (Tr. at 77–78, 141–17, 152–3, 155–6.) Specifically, after the Mitchells requested a price reduction due to the engineering report, Ryan convinced the Shanes to accept an $8,000 price reduction and to extend the date of return of the Mitchells' contract of sale from January 13, 2002, to January 17, 2002. (Tr. at 105–106, 332–334.)

Although there is no evidence that the Defendants violated any customs and practices of the real estate market, even if there were, none of these alleged violations show that the Shanes' decision to accept the Selleck bid was a pretext for racial discrimination. Ryan's duty was to his principal the Shanes and the evidence shows that he acted in a manner consistent with the Shanes' best interests and desire to sell the Subject Property in an expeditious manner. Ryan attempted to facilitate the sale of the Subject Property to the Mitchells but their failure, or their agent's failure, to return the signed contract within the stated time period without material changes was the Mitchells' fault and required Ryan to seek other offers, the fact of which he conveyed to Kaplan.

Indeed, if either potential purchaser received preferential treatment by the Defendants it was more likely the Mitchells. While Mitchells were given from January 4, 2002, until January 17, 2002, to return the signed contract, Selleck was given only 24 hours. (Moritt Reply Aff. at ¶ 21.)

---

**3.** Even assuming that Mr. Crosier is qualified as an appraiser and that his estimate of the appraisal value of $685,000 was based on proper methodologies, his estimate was based solely on an exterior inspection only. (Ex. A of Pl.'s Exhibit Aff. ¶ 21.) Moreover, the relevant inquiry is not what the Subject Property might have appraised for at that time, but whether the Shanes had a reasonable concern that the 90% financing might negatively effect the transaction.

The record clearly reveals that the Shanes' decision to sell to Mr. Selleck as opposed to the Mitchell's was dictated by economical concerns and by their desire to sell the property expeditiously. The Court of Appeals for the Second Circuit found each of the material facts to be undisputed in their Decision. *Mitchell v. Century 21 Rustic Realty*, No. 02–7495, 45 Fed.Appx. 59 (2nd Cir. September 6, 2002). They still are. Plaintiffs continued failure to adduce any evidence to the contrary requires that Defendants' motion for summary judgment be granted, and that the pending sale of the Subject Property be consummated without further delay.

B. Request For Recusal

■ The Mitchells' responsive memorandum requests that this Court and Magistrate Judge Wall recuse themselves from this matter because they are allegedly, "heavily biased in favor of the defense and unlikely to render an impartial decision on the merits." (Plaintiff's Mem. at 10.) In order to grant the Mitchells' recusal request, "the Court must be convinced that 'facts have been presented', assuming the truth, that would lead a reasonable person to infer that bias or prejudice existed, thereby foreclosing the impartiality of judgment." *Dee v. Institutional Networks Corp.*, 559 F.Supp. 1282, 1284 (S.D.N.Y. 1983) (quoting *Markus v. United States*, 545 F.Supp. 998, 1000 (S.D.N.Y.) 1982, *aff'd*, 742 F.2d 1444 (2d Cir.1983)).

The Court first notes that the Mitchells have failed to file any affidavit signed by them in support of the recusal request. This alone is a basis for denial of that request. *Paschall v. Mayone*, 454 F.Supp. 1289, 1300 (S.D.N.Y.1978). Nonetheless, neither this Court nor Magistrate Judge Wall have acted with any bias towards the Mitchells. This Court's prior decision was based on the evidence presented to it (or lack thereof) and by the relevant law and was upheld by the Court of Appeals.

The Mitchells' claim that there has been bias based on ex-parte communications with the Court regarding the motion schedule for summary judgment is incorrect. All communications regarding Defendants' Order to Show Cause were between the parties and the Court's courtroom deputy, who was contacted by Defendants' counsel when SM allegedly refused to set a briefing schedule in accordance with this Court's rules. It is the courtroom deputy's responsibility to set hearing dates. Moreover, the Order to Show Cause required that service be made upon Plaintiffs on the same day it was filed with the Court. (Order to Show Cause, pg. 2.)

In fact, it is SM who has repeatedly called this Court's chambers regarding this case and has faxed documents to this Court ex-parte. Specifically, SM faxed this Court a letter on October 19, 2002, seeking reconsideration of its October 18, 2002, ruling. Although the letter stated that it had been copied to Defendants, it had not. (Moritt Reply Aff. ¶ 30.)

The discovery schedule set out by this Court over the past few weeks was necessitated by the Mitchells' delay over the past eight months in conducting discovery, despite the pending sale, as well as the fact that the Mitchells had already conducted a full evidentiary hearing. Furthermore, this Court and Magistrate Judge Wall have given the Mitchells multiple opportunities to despose the Shanes, both in Florida and by telephone. Each time SM elected not to proceed with the deposition.

SM's assertion that this Court believes that "only direct evidence of racial discrimination is supportive of these type of claims" is also incorrect. (Plaintiffs' Mem. of Law, pg. 10.) This Court is well aware, as Judge Wall's Report makes clear, of "the difficulty any party faces in present-

ing hard evidence of racial discrimination." (Report at 10.) However, in this case there is absolutely no evidence of discrimination, and it is clear that the Shanes had legitimate, non-discriminatory reasons for selecting the Selleck offer.

This Court perceives no manner in which a reasonable person could conclude that it has not acted impartially. Accordingly, the Mitchells' request for recusal is DENIED.

### CONCLUSION

Summary judgment is hereby GRANTED to all Defendants and the Notice of Pendency is CANCELLED immediately. This Court will not issue a stay of this Order and if Plaintiffs make any such application to the Second Circuit, either orally or written, they must give Defendants a full and fair opportunity to state their opposition. This Court will entertain Defendants' motions for sanctions after Plaintiffs have had a chance to appeal.

SO ORDERED.